# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fraternal Order of Police,        :
Lodge #5 and Arthur Herder        :
                                  :
          v.                      :    No. 520 C.D. 2017
                                  :    Argued: March 8, 2018
City of Philadelphia              :
                                  :
Appeal of: Arthur Herder          :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION**
**BY JUDGE SIMPSON**              **FILED: April 4, 2018**

In this grievance arbitration matter, Arthur Herder (Grievant) appeals an order of the Court of Common Pleas of Philadelphia County (trial court)[1] that denied Grievant's petition to intervene and to vacate a grievance arbitration award issued under the statute known as the Policemen and Firemen Collective Bargaining Act,[2] more commonly referred to as Act 111. The award concluded that the City of Philadelphia (City) had just cause to terminate Grievant for conduct unbecoming an officer. The trial court agreed with the City and Grievant's union, the Fraternal Order of Police, Lodge No. 5 (Union), that in accord with the parties' collective bargaining agreement (CBA), and their longstanding practices, only City and the Union, as the parties to the CBA, have standing to initiate arbitration or appeal an adverse arbitration award.

---

[1] The Honorable Linda A. Carpenter presided.

[2] See Act of June 24, 1968, P.L. 237, as amended, 43 P.S. §§217.1-217.10.

Grievant contends the trial court erred in determining he lacked standing to bring his petition to intervene and to vacate the arbitration award. In response, the City and the Union assert: Grievant cannot challenge an arbitration award as an intervenor where neither the City nor the Union instituted an action in the trial court in which Grievant could intervene; Grievant cannot challenge an arbitration award as a plaintiff or petitioner where he is neither a party to the CBA nor authorized by the CBA to initiate arbitration; and, even assuming, for sake of argument, that Grievant had standing to challenge the arbitration award, his challenge did not raise any issues reviewable under Act 111's narrow *certiorari* standard. For the reasons that follow, we affirm.

## I. Background

The City hired Grievant as a police officer in 1993. Since 2006, the City suspended Grievant on three occasions. Grievant received a 30-day suspension in 2007 for vandalizing his wife's vehicle. In 2012, the City twice suspended Grievant for abusing his authority while off duty. The City also twice transferred Grievant for threatening behavior toward his coworkers.

In January 2015, the City Police Department's Office of Internal Affairs (OIA) learned of a road rage incident in Cheltenham Township, a neighboring municipality. During the incident, Grievant allegedly exited his vehicle and threatened two high school seniors who blew their horn at Grievant for passing their car in the opposing traffic lane and then making a left turn before they could do so. Grievant stopped his vehicle, walked up to the driver's window, cursed at him, and

threatened to "put bullet holes in him." See Arbitrator's Award (Award), 10/14/16, at 5; Reproduced Record (R.R.) at 36. When returning to his vehicle, Grievant lifted his shirt to reveal a handgun. Id. Grievant then made a shooting gesture toward the driver with his thumb and index finger. Id.

The two students reported the incident to their school police officer and the Cheltenham Police Department. They accurately reported Grievant's license plate number and described him and his vehicle. At the time of the incident, Grievant was on injury leave.

OIA performed its own investigation and determined that "more likely than not" Grievant engaged in the misconduct as alleged. Award at 6; R.R. at 37. OIA presented its findings to the Police Board of Inquiry (Board), which found Grievant guilty of "conduct unbecoming" under four sections of the Department's Disciplinary Code.[3] The Board recommended a 120-day suspension (30-day suspension without pay on each of the four charges). Id. However, the Police Commissioner terminated Grievant's employment.

---

[3] The Office of Internal Affairs found Grievant guilty of violating the following Sections of Article I ("Conduct Unbecoming") of the Police Department's Disciplinary Code: (1) 1-§001-10 (unspecified); (2) 1-§009-10 (lying or attempting to deceive regarding a material fact during the course of a Departmental investigation); (3) 1-§021-10 (any incident, conduct, or course of conduct which indicates that an employee has little or no regard for his/her responsibility as a member of the Police Department); and, (4) 1-§026-10 (engaging in any action that constitutes the commission of a felony or misdemeanor which carries a potential sentence of more than (1) year). Each of these charges provide for a possible maximum penalty of dismissal for a first offense. See Reproduced Record (R.R.) at 143-47.

3

Thereafter, the Union filed a grievance, which the City denied. The Union demanded arbitration. In April 2016, Arbitrator James M. Darby (Arbitrator) conducted a hearing at which the parties presented their evidence and arguments. The Union argued that the City failed to establish just cause for Grievant's termination. In an October 2016 decision, Arbitrator found, based on the totality of the evidence presented, that more likely than not Grievant engaged in the alleged conduct. See Award at 14-15; R.R. at 45-46. Arbitrator also determined Grievant's actions constituted "conduct unbecoming" under three sections of the Department's Disciplinary Code.[4] Award at 15; R.R. at 46. Taking into consideration Grievant's prior disciplinary history, Arbitrator determined Grievant had notice that the City had just cause to terminate his employment based upon another incident of conduct unbecoming an officer.

In November 2016, Grievant filed a petition to intervene and vacate the arbitration award with the trial court. In accord with a rule to show cause, the City and the Union filed responses in opposition to Grievant's petition. On December 30, 2016, the trial court entered an order denying Grievant's petition to intervene and vacate. Grievant timely appealed to the Superior Court, which transferred the appeal here.

In an opinion in support of its order, the trial court observed that Section XXI of the parties' 2014-17 CBA (R.R. at 112-13), governing grievance and

---

[4] Arbitrator found Grievant violated the following "Conduct Unbecoming" sections of the Disciplinary Code: (1) 1-§001-10 (unspecified); (2) 1-§021-10 (any incident, conduct, or course of conduct which indicates that an employee has little or no regard for his/her responsibility as a member of the Police Department); and, (3) 1-§026-10 (engaging in any action that constitutes the commission of a felony or misdemeanor which carries a potential sentence of more than (1) year).

4

arbitration procedure, does not specify who has the right to demand arbitration, or to appeal an adverse arbitration award. Nonetheless, the trial court agreed with the City and the Union that such authority rests solely with the exclusive parties to the CBA, which are the City and the Union. In determining Grievant lacked standing to bring the petition to intervene, the trial court reasoned:

> The courts of this Commonwealth have long held that the 'meaning of the CBA is governed by its language' and that the parties' intention in entering into the CBA is the 'paramount consideration.' [See Ray v. Brookville Sch. Dist., 19 A.3d 29, 33 (Pa. Cmwlth. 2011) (citing Kozura v. Tulpehocken Area Sch. Dist., 791 A.2d 1169 (Pa. 2002) and Hutchinson v. Sunbeam Coal Corp., 519 A.2d 385 (Pa. 1986))]. The City and the [Union] rely upon the history of interest arbitration awards, entered pursuant to [Act 111], as evidenced by the parties' intent that the [Union] have the exclusive authority to challenge a grievance arbitration award. The grievance and arbitration procedure was first introduced in the 1982-1984 Award and the parties further referenced the 1988-1990 Award and the 2004-2008 Award. Specifically, the 2004-2008 Interest Arbitration Award recognizes the [Union] as the 'exclusive collective bargaining representative' of uniformed members of the police force. Additionally, the City and the [Union] cite to the longstanding practice between the parties as demonstrative of their intention that individual grievants not have the authority to pursue arbitration or appeal an adverse arbitration award.

Tr. Ct., Slip Op., 6/20/17, at 3; R.R. at 4.

The trial court further noted that Commonwealth Court precedent supports the City's and the Union's position. Citing Ray and Krenzelak v. Canon-McMillan School District, 566 A.2d 346 (Pa. Cmwlth. 1989), the trial court observed

5

that generally, CBAs invest only the parties to the contract, here the Union and the City, with the authority to initiate arbitration and to decide whether to appeal an adverse arbitration award. To that end, the trial court recognized the underlying policy consideration that allowing individual union members to appeal an adverse arbitration award would lead to chaos and a breakdown in the collective bargaining scheme. Instead of being able to rely on the arbitration of employee grievances by the union, the affected employers would face a constant threat of litigation by individual employees dissatisfied with the arbitration result.

Therefore, in accord with Ray and Krenzelak, the trial court determined Grievant did not have standing to file his petition to intervene and vacate the arbitration award.

## II. Discussion

Grievant contends the trial court erred or abused its discretion by not granting him leave to intervene under Pennsylvania Rules of Civil Procedure Nos. 2326-30 governing intervention. Although not a named party to the arbitration proceeding between the City and the Union, Grievant asserts he, as the sole grievant, was a necessary party to the proceeding. Rule No. 2327(4) provides: "At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein subject to these rules if …. (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." (Emphasis added.)

6

Grievant argues the trial court mistakenly relied on the CBA, rather than Rule No. 2327, and held that he could not intervene because he was not a party to the CBA. In particular, Grievant asserts the trial court erred in citing our decisions in Ray and Krenzelak, which acknowledged that in Kozura, the Supreme Court held that when a CBA expressly authorized an individual union member to initiate arbitration, that member may appeal an adverse arbitration award. In short, Grievant maintains that Kozura trumps Ray and Krenzelak.

In reviewing the circumstances in the present case, Grievant asserts the CBA does not address who may initiate arbitration, and thus appeal an arbitration award. Therefore, Grievant maintains, the Rules of Civil Procedure control and require that he be granted leave to intervene. Alternatively, if the CBA controls, Grievant argues he is entitled to intervene under Kozura because the language of the CBA does not address who may initiate arbitration or appeal an arbitration award.

We disagree. As a general principle, a union, not its individual members, controls the appeal of an arbitration award. Ray; Krenzelak. As an exception, if the contractual language of the CBA provides individual union members with a personal right to seek arbitration, a union member may appeal an adverse arbitration result if the union does not appeal. Kozura. In Kozura, the CBA expressly authorized an individual union member to initiate arbitration, and it gave that individual the right to choose his representative at all stages of the grievance and arbitration process. In light of these provisions, the Supreme Court determined that Kozura, as an employee, not the union, controlled the decision of whether to appeal an adverse arbitration award.

7

In contrast, the CBA in Ray authorized an individual union member to submit a grievance through the first three steps of the grievance process: Level 1 (Principal); Level 2 (Superintendent); Level 3 (School Board). However, only the union could initiate arbitration under Level 4.

Distinguishing Kozura, we noted in Ray that unlike the contract in Kozura, the CBA did not authorize the union member to initiate arbitration. Although Ray had the right to represent herself in an arbitration appeal, the CBA granted the union the exclusive right to initiate arbitration and thus the exclusive right to determine whether to appeal the arbitration award.

Similarly, in Bonifate v. Ringgold School District, 961 A.2d 246 (Pa. Cmwlth. 2008), the CBA provided that the union, not its individual members, could refer a grievance to binding arbitration. Because the union controlled whether a matter proceeded to arbitration, we determined that Bonifate did not have the right to decide to arbitrate the grievance; therefore, he did not have the ability to appeal the arbitration award to the common pleas court.

In Krenzelak, we addressed a different situation where the language of the CBA did not specify who could appeal an arbitration award. We also recognized that the Public Employe Relations Act (PERA),[5] which the CBA incorporated, did not clearly specify who may appeal an arbitration award. However, noting that Krenzelak, as an individual union member, was not a party to the arbitration proceeding, we determined he did not have standing to appeal the arbitrator's

---

[5] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§1101.101-1101.2201.

8

decision. Citing McCluskey v. Department of Transportation, 391 A.2d 45 (Pa. Cmwlth. 1978), overruled on other grounds by Official Court Reporters of Court of Common Pleas of Philadelphia County v. Pennsylvania Labor Relations Board, 467 A.2d 311 (Pa. 1983), we determined that if the CBA does not specify who may appeal an arbitration decision, and the employer and the union were the only parties to the arbitration, they were the only parties with standing to appeal an arbitrator's award.

Turning to the facts here, we note that only the City and the Union are parties to the CBA. Nonetheless, the CBA does not explicitly state whether a person other than the Union or the City may initiate a grievance or request arbitration. The parties' current grievance and arbitration procedures are similar to those initially incorporated in the 1982-84 Interest Arbitration Award (R.R. at 209-10). These procedures were continued in the 1988-90 Interest Arbitration Award (R.R. at 226), the 2004-08 Interest Arbitration Award (R.R. at 189), and, most recently in the 2014-17 CBA (R.R. at 112-13), which is applicable here.

In explaining the current grievance procedure, a representative from the Union stated in a declaration, and a representative from the City stated in an affidavit, that for the last 30 years, without exception, only the Union or the City may demand arbitration under the grievance arbitration procedure in the CBA. See R.R. at 162-63, 229-30. A court may use evidence of past practices between the parties to interpret a CBA. Shippensburg Area Educ. Ass'n v. Shippensburg Area Sch. Dist., 400 A.2d 1331 (Pa. Cmwlth. 1979).

Given the parties' longstanding contractual interpretation and practice of limiting the right to demand arbitration to the City and Union as the exclusive parties to the CBA, and the trial court's reliance on our decisions in Ray and Krenzelak, we discern no error or abuse of discretion by the trial court in determining that Grievant lacked standing to file his petition in the trial court. The longstanding contractual interpretation and practice of the City and the Union demonstrated their intent, as the exclusive parties to the CBA, not to authorize individual union members to purse arbitration or appeal an arbitration award. Tr. Ct., Slip Op., at 3; R.R. at 4.

Further, because the City and the Union did not petition to appeal or vacate the arbitration award, there was no pending appeal or civil action in which Grievant could intervene. Therefore, the Rules of Civil Procedure are inapplicable and did not afford Grievant a separate means to intervene or petition to vacate the arbitration award.

As noted above, a party is permitted to intervene in a pending "action" if "the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." Pa. R.C.P. No. 2327(4) (emphasis added). Under the Rules governing intervention, the term "action means any civil action or proceeding brought in or appealed to any court of record which is subject to these rules." Pa. R.C.P. No. 2326 (emphasis added). Further, all actions shall be prosecuted by and in the name of the real party in interest (subject to exceptions not applicable here). Pa. R.C.P. No. 2002(a). Also,

10

any act, other than a verification, may be performed by a party's attorney. Pa. R.C.P. No. 1002.

Here, Grievant's petition in the trial court listed the Union as the plaintiff and the City as the defendant. However, the Union opposed the petition, and therefore obviously did not authorize Grievant's attorney to file the petition on the Union's behalf. Pa. R.C.P. No. 1002. Thus, Grievant's contention (that the language of the CBA does not control and that the Rules governing intervention provide him a right to intervene to appeal) fails. Ray.

As an additional matter, the City presents an alternative argument that even assuming that Grievant had standing to challenge the arbitration award, his challenge did not raise any issues reviewable under the court's narrow *certiorari* review of Act 111 grievance arbitration awards. See Town of McCandless v. McCandless Police Officers Ass'n, 901 A.2d 991 (Pa. 2006) (narrow *certiorari* review applicable to grievance arbitration appeals under Act 111 allows inquiry into only four areas: (1) jurisdiction of the arbitrator, (2) regularity of the proceedings, (3) whether the arbitrator exceeded his powers, and, (4) whether constitutional rights were violated). Therefore, a reviewing court is bound by an arbitrator's findings of disputed facts, even if the court disagrees with them.

As such, Grievant cannot challenge Arbitrator's findings of fact or conclusions of law as erroneous. As discussed above, Arbitrator determined that based on the totality of the evidence and circumstances, it was more likely than not that Grievant engaged in the incident. Award at 14-15; R.R. at 45-46. Arbitrator

11

further determined that Grievant, based on his prior discipline, had notice that another proven incident of conduct unbecoming an officer could result in termination of employment.  Award at 15; R.R. at 46.  Consequently, even assuming Grievant had standing to petition to intervene and vacate the arbitration award, his disagreement with Arbitrator's findings and conclusions cannot serve as the basis for an appeal.  McCandless.  As such, the trial court's denial of Grievant's petition to intervene and vacate the arbitration award could also be affirmed on this alternative ground.

## III. Conclusion

For the above reasons, we discern no error or abuse of discretion by the trial court in denying Grievant's petition to intervene and vacate the arbitration award.  Accordingly, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Fraternal Order of Police, Lodge #5 and Arthur Herder | : | |
| | : | |
| | : | |
| v. | : | No. 520 C.D. 2017 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: Arthur Herder | : | |

# **O R D E R**

    **AND NOW**, this 4th day of April, 2018, the order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.


                _____

                ROBERT SIMPSON, Judge